IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00332-REB-CBS

SCOTT HILL, individually;
THE ESTATE OF APRIL HILL, Scott Hill, Personal Representative;
JOHN PAUL, Conservator for the Estate of Hope Paul, a minor;
SCOTT HILL, Conservator for the Estate of Katelyn Hill, a minor; and
GENE CRABTREE, Conservator for the Estate of Dennis Scoggins, a minor,

       Plaintiffs,

v.

WESTERN DOOR, a division of LUMBER PRODUCTS, INC,
a foreign corporation doing business in Colorado, and
CRISTOBAL BONILLA,

       Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL

Magistrate Judge Craig B. Shaffer

       THIS MATTER comes before the court on Plaintiffs' Motion to Compel (Document #28), filed on May 17, 2005. Defendants Western Door and Cristobal Bonilla filed a consolidated Response on June 9, 2005, while Plaintiffs filed a single Reply to Defendants' Objection on June 24, 2005. This court heard oral argument on the pending motion during a hearing on June 30, 2005. The court has carefully considered the arguments raised in the parties' briefs, as well as during the June 30th hearing, and has reviewed the entire court file and the

applicable case law. I have also reviewed the documents submitted for *in camera* review by Defendant Western Door. For the following reasons, the court will grant in part and deny in part Plaintiffs' motion.

## FACTUAL BACKGROUND

The instant action arises out of a collision on July 25, 2002 between an automobile driven by April Hill, deceased, and a tractor-trailer driven by Defendant Bonilla. This collision was precipitated by another vehicle driven by Rhonda Jackman crossing the highway centerline and striking Defendant Bonilla's oncoming truck. Mr. Bonilla's tractor-trailer then collided with Ms. Hill's vehicle. The occupants of the Hill vehicle included Ms. Hill's half brother, Dennis Scoggins, her three year old daughter, Hope Paul, and her one year old daughter, Katelyn Hill. As a result of the crash, April Hill was killed. Dennis Scoggins sustained injuries that left him a paraplegic and confined to a wheelchair. Hope Paul and Katelyn Hill also were seriously injured and Katelyn remains partially paralyzed. Plaintiffs allege that Defendant Bonilla was negligent in operating the tractor-trailer which he was driving in the scope and course of his employment with Defendant Western Door. Plaintiffs contend that Defendant Western Door was negligent in hiring, training and supervising Mr. Bonilla.

With the instant motion, Plaintiffs seek an Order compelling production of documents maintained by Defendants' insurance carrier, the St. Paul Insurance Company ("St. Paul). Specifically, the Motion to Compel demands production of all documents in the St. Paul claim

file created prior to the filing of Plaintiffs' Complaint on February 20, 2004, or alternatively, all documents in the insurance claim file created before December 2, 2003, the date that Plaintiffs made a formal demand for settlement. Plaintiffs argue that the requested documents were not prepared in anticipation of litigation and, therefore, are properly discoverable under Fed.R.Civ.P. 26(b)(1).

Not surprisingly, Defendants take a contrary position. Defendants state that a significant portion of the St. Paul claims file already has been produced in discovery, including recorded transcripts, records of products on Defendant Bonilla's truck, and photographs. "The records that have not been produced are almost entirely computer generated notes from St. Paul Representatives (sic.), emails from St. Paul representatives, correspondence between St. Paul and Lumber Products, and Terry Darby's notes." *See* Defendants' Response to Plaintiffs' Motion to Compel, at 6-7. Defendants argue that the withheld documents contain the mental impressions of St. Paul employees or representatives and are not discoverable under Fed.R.Civ.P. 26(b)(3).

## ANALYSIS

By excluding "privileged" information from the broad parameters of pre-trial discovery, Rule 26(b)(1) attempts to strike a balance between conflicting interests. *See* Fed.R.Civ.P. 26(b)(1) ("parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party"). Privileges further the administration of justice and "should not be set aside lightly." *See Horton v. United States*, 204 F.R.D. 670, 672 (D. Colo. 2002);

*McNeil-PPC, Inc. v. Procter & Gamble Co.*, 138 F.R.D. 136, 138 (D. Colo. 1991). However, privileges also have the effect of withholding relevant information from the finder of fact, and for that reason should be narrowly construed. *See Montgomery v. Leftwich, Moore & Douglas*, 161 F.R.D. 224, 225 (D.D.C. 1995). For the same reason, the party withholding information on the basis of privilege must make a clear showing that the asserted privilege applies and must establish all elements of the privilege. *National Union Fire Ins. Co. of Pittsburgh v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994). *See also* Fed.R.Civ.P. 26(b)(5) (the party claiming privilege must present sufficient information to permit the opposing party to assess the applicability of the privilege).

The work-product doctrine protects from discovery materials obtained or prepared in anticipation of litigation, as well as the attorney's thought processes, opinions, conclusions and legal theories. *Religious Technology Center v. F.A.C.T.Net, Inc.*, 945 F. Supp. 1470, 1480 (D. Colo. 1996). *See also* Fed.R.Civ.P. 26(b)(3) (providing that while a party may, upon a proper showing of substantial need, obtain documents and tangible things prepared in anticipation of litigation or for trial, "the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of the party concerning the litigation"). The doctrine seeks to protect the adversary system and "rests on the belief that such promotion of adversary preparation ultimately furthers the truth finding process." *Khandji v. Keystone Resorts Management, Inc.*, 140 F.R.D. 697, 699 (D. Colo. 1992)

(quoting *Grumman Aerospace Corp. v. Titanium Metals Corp. of America*, 91 F.R.D. 84, 99 (E.D.N.Y. 1981)).

> A "primary function" of the work product doctrine "is to prevent a current or potential adversary in litigation from gaining access to the fruits of counsel's investigative and analytical effort, and strategies for developing and presenting the client's case. Therefore, a waiver may occur when a party discloses work product in a manner that "increase[s] the likelihood that a current or potential opponent in the litigation would gain access to the documents in question."

*United States v. Bagley*, 212 F.R.D. 554, 560 (C.D. Cal. 2003) (internal citations omitted). The work-product doctrine must be applied in a common sense manner and on a case-by-case basis. *St. Paul Reinsurance Company, Ltd. v. Commercial Financial Corp.*, 197 F.R.D. 620, 630 (N.D. Iowa 2000).

A document is "prepared in anticipation of litigation" if the preparer faces an actual claim or if the threat of litigation is substantial and imminent, or fairly foreseeable. *See Kidwiler v. Progressive Paloverde Insurance Co.*, 192 F.R.D. 536, 542 (N.D. W.Va. 2000). "The inchoate possibility, or even the likely chance of litigation" does not justify work product protection. *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 683 (D. Kan. 2000). "Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was prepared in response to a particular circumstance." *Electronic Data Systems Corp. v. Steingraber*, 2003 WL 21653414, *5 (E.D. Tex. 2003). *See also United States ex rel. (Redacted) v. (Redacted)*, 209 F.R.D. 475, 480 (D. Utah

2001) (holding that documents were protected by the work product doctrine where the materials at issue were prepared at the direction and under the supervision of attorneys investigating allegations in the pending action); *Wikel v. Wal-Mart Stores, Inc.*, 197 F.R.D. 493, 495 (N.D. Okl. 2000) (holding that the "involvement of an attorney makes it more likely than not that the focus has shifted toward litigation, making materials more likely to have been prepared in anticipation of litigation"). Ultimately, the court's analysis will depend upon the particular circumstances of a given case and may turn on a document-by-document review.

The "in anticipation of litigation requirement" becomes potentially problematic when applied to documents prepared in connection with the investigation and evaluation of insurance claims. As one court has observed,

> investigation and evaluation of insurance claims is the regular, ordinary, and principal business of insurance companies. Although at some point a company's investigation may shift from the ordinary course of business to an anticipation of litigation, there is no hard and fast rule as to when this occurs.

*Bogan v. Northwestern Mutual Life Insurance Co.*, 163 F.R.D. 460, 464 (S.D.N.Y. 1995) (internal citations omitted).

In invoking the work product doctrine, Defendants broadly assert that in all cases involving third party claims, any investigation undertaken by the insurer and all associated documents are made in anticipation of litigation. Defendants cite the decision in *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993), as the sole support for this sweeping generalization. In that case, the court reasoned that in the case of a third-party claim, "there is

always the possibility that the claim will end in litigation." From that theoretical possibility, the court found "it is logical to conclude that . . . files generated during the investigation of third party claims are made in anticipation of litigation and are not discoverable." *Id. Weitsman* proposes an inflexible approach that is not supported by a thorough review of the pertinent case law. *See, e.g., Travelers Casualty & Surety Co. v. J.D. Elliott & Co., P.C.*, 2004 WL 2339549, *2 (S.D.N.Y. 2004) (noting "there is no 'bright line' test for determining when an insurance company's investigative work passes from work in the ordinary course of the insurance company's business to work performed in anticipation of litigation"); *Holton v. S & W Marine, Inc.*, 2000 WL 1693667, *2 (E.D. La. 2000) (refusing to recognize a "bright-line rule" that every statement taken by an insurance adjuster is prepared in anticipation of litigation).

Plaintiffs argue, to the contrary, that the protections afforded by the work product doctrine were not available until either December 2, 2003, the date Plaintiffs' counsel made a formal demand for settlement, or February 20, 2004, when Plaintiffs' original Complaint was actually filed. My *in camera* review of the disputed documents leads me to a different conclusion. I find that Defendants may properly invoke the work product doctrine as to claims file documents prepared after December 11, 2002. However, I find that Defendants have not presented clear evidence to support their invocation of the work product doctrine for insurance documents created prior to that date.

The St. Paul's claims adjustor has testified that he personally anticipated that litigation

7

would arise from the July 25, 2002 accident once he learned the number of fatalities and injuries involved.  *See* Deposition of Terrence P. Darby, at 17, attached as Exhibit D to Defendants' Response to Plaintiffs' Motion to Compel.  *Compare Holton v. S & W Marine, Inc.*, 2000 WL 1693667, *2 (postulating, without explanation, that consideration of the "in anticipation of litigation" requirement might be different where the insurance investigation involves "an extraordinary and tragic event").  I have also reviewed an affidavit from Seth Bingham, Esq., an attorney in New Mexico.  Mr. Bingham states that he has defended numerous St. Paul insured claims that have resulted litigation and has "helped Terry Darby with claims before the claims resulted in litigation, especially when those accidents resulted in death."  *See* Affidavit of Seth V. Bingham, attached as Exhibit E to Defendants' Response to Plaintiffs' Motion to Compel.  Mr. Bingham further avers that his

> experience is that Mr. Darby only contacts me on certain claims prior to litigation because of the particular facts of the claim or the potential damages in the claim. Virtually all of these claims result in litigation being filed.

*Id.*

According to Mr. Bingham, he received a telephone call from Terrence Darby on July 25, 2002 concerning a multiple fatality accident in Utah earlier that day.  Based upon that telephone call, Bingham "contacted Brian Charles, an accident reconstructionist from Texas" who Bingham had used in past litigation matters.  Bingham states that he "retained the services of Mr. Charles and I asked him to investigate this accident because I believed it was very likely the accident

would result in litigation due to the fatalities." *Id. But see American Casualty Company of Reading, Pennsylvania v. Healthcare Indemnity , Inc.*, 2001 WL 1718275, *2 (D. Kan. 2001) (noting that the party seeking to invoke the work product doctrine must sustain its burden with more than conclusory statements or *ipse dixit* assertions).

In some instances, the insurer's retention of counsel signals the anticipation of litigation. *See Tudor Insurance Co. v. McKenna Associates*, 2003 WL 21488058, *3 (S.D.N.Y. 2003) and cases cited therein. However, I have reviewed a billing statement from Mr. Bingham to the St. Paul Company covering the period from July 25, 2002 to August 7, 2002. The entries on that billing statement do not suggest any legal analysis, or even hint that Mr. Bingham was asked to provide legal analysis or strategy. To the contrary, it appears that Mr. Bingham was merely a intermediary between the St. Paul claims adjustor and the retained accident reconstruction expert. In a letter to the St. Paul claims adjustor, Mr. Bingham forwards certain requests for assistance from the accident reconstruction expert, but concludes by stating that he will "leave the follow-up on these items" to the claims adjuster. *Cf. Falkner v. General Motors Corp.*, 200 F.R.D. 620, 623-24 (S.D. Iowa 2001) (observing that an "insurance adjuster attempting to ascertain the facts surrounding an accident, is not in the same position as an attorney considering legal theories). I found no evidence that Mr. Bingham played any material role in the formulation of Mr. Darby's analysis prior to December 11, 2002. Moreover, I found no indication that Mr. Bingham was copied on any written reports or evaluations prepared by Mr. Darby prior to December 11,

9

2002.

However, my *in camera* review of documents persuades me that by December 2002, the St. Paul's efforts had shifted from the ordinary course of business to anticipation of litigation. Very shortly after receiving counsel's December 11, 2002, the St. Paul decided that it would not share investigative materials with Plaintiffs' counsel. Almost immediately after December 11, 2002, entries in the insurance claim file acknowledge that a suit will be filled and express the need to "prepare for aggressive defense of any liability claims pursued."

Accordingly, Plaintiffs' Motion to Compel (Document #28), filed on May 17, 2005, is GRANTED IN PART and DENIED IN PART. Defendants are hereby directed to produce to Plaintiffs those documents from the St. Paul insurance claims file dated prior to December, 11, 2002, which previously were withheld on the basis of the work product doctrine. In all other respect, Plaintiffs' motion is denied. Plaintiffs' Motion to Compel also requests an award of expenses incurred in pursuing relief under Rule 37(a). Where a motion to compel is granted in part and denied in part, the court is directed to apportion the reasonable expenses incurred in relation to the motion among the parties in a just manner. *See* Fed.R.Civ.P. 37(a)(4)(C). Given that Plaintiffs' motion was denied in substantial part, I will exercise my discretion and require each party to bear their own fees and costs associated with the Motion to Compel. *Cf. Nalco Chemical Co. v. Hydro Technologies, Inc.*, 148 F.R.D. 608, 617 (E.D. Wis. 1993) (requiring each party to bear their own costs and fees where the motion to compel was only partially

successful).

DATED this 29th day of July, 2005.

BY THE COURT:

   /s/Craig B. Shaffer

Craig B. Shaffer
United States Magistrate Judge