**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 04-cv-0332-REB-CBS

SCOTT HILL, individually,
THE ESTATE OF APRIL HILL, Scott Hill, Personal Representative,
JOHN PAUL, Conservator for the Estate of Hope Paul, a minor,
SCOTT HILL, Conservator for the Estate of Katelyn Hill, a minor,
GARRY SCOGGINS, Co-Conservators for the Estate of Dennis Scoggins, a minor, and
DIANA SCOGGINGS, Co-Conservators for the Estate of Dennis Scoggins, a minor,

      Plaintiffs,

v.

WESTERN DOOR, a division of LUMBER PRODUCTS, INC., a foreign corporation,
doing business in Colorado, and
CRISTOBAL BONILLA,

      Defendants.

---

**ORDER CONCERNING DEFENDANTS' MOTIONS
FOR PARTIAL SUMMARY JUDGMENT**

---

**Blackburn, J.**

      This matter is before me on the following motions: 1) Defendants' Motion for

Partial Summary Judgment on Plaintiffs' Negligence Per Se Claim [#26], filed May 2,

2005; and 2) Defendants' Supplemental Motion for Partial Summary Judgment on

Plaintiffs' Negligence Per Se Claim [#68], filed August 24, 2005.  I treat both motions as

being addressed to the Amended Complaint for Damages and Jury Demand (Amended

Complaint) [#61], filed July 18, 2005.  I grant both motions.

## I.  JURISDICTION & STANDARD OF REVIEW

I have diversity jurisdiction over this case under 28 U.S.C. § 1332.  In fashioning my ruling I have judicially noticed all adjudicative facts in the file and record of this action *pro tanto.*  I have considered the pleadings, discovery, and affidavits on file, together with the arguments advanced and authorities cited by the parties in their respective briefs. I have employed the analysis required by apposite law. ***See Anderson v. Liberty Lobby, Inc***., 477 U.S. 242, 250 (1986); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 325 (1986); ***Matsushita Electric Industrial Co. v. Zenith Radio Corp***., 475 U.S. 574, 587 (1986); ***Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc***., 912 F.2d 1238, 1241 (10th Cir.1990); ***Redmon v. United States***, 934 F.2d 1151,1155 (10th Cir. 1991); and ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir.1994).

## II.  FACTS

This case arises from a fatal accident that occurred on State Route 666 near Monticello, Utah on July 25, 2002.  Route 666 is a two lane highway at the point where the accident happened.  Defendant, Cristobal Bonilla, an employee of defendant, Lumber Products, Inc., was eastbound on Route 666 in a 1999 Volvo tractor-trailer.  At Mile Marker 9 near Monticello, Utah, a 1992 Chevy Lumina, driven by Rhonda Jackman, suddenly crossed the center line and collided head-on with Bonilla's truck.  Jackman was traveling westbound on Route 666.  The three occupants of the Chevy Lumina died at the scene.

Bonilla's truck also collided with a 1999 Dodge Stratus, driven by April Hill.  Hill also was traveling westbound on Route 666 at the time of the accident.  The

defendants say April Hill was following Jackman's Chevy Lumina.  The plaintiffs say

Jackman was driving behind April Hill in her Dodge Stratus.  This discrepancy is not

material to the issues raised in the motions for summary judgment.  April Hill was

pronounced dead at the hospital.  Dennis Scoggins was the right front passenger of the

Dodge Stratus, and he suffered injuries. Katelyn Hill and Hope Paul both were in

upright car seats in the rear of the Dodge Stratus, and they both suffered injuries.  The

plaintiffs are the occupants of the 1999 Dodge Stratus, including the estate of April Hill,

and Scott Hill, April Hill's surviving spouse.  They have brought claims for negligence,

respondeat superior, negligence per se, negligent hiring, training and supervision, and

wrongful death against Lumber Products and Bonilla.

### III.  NEGLIGENCE PER SE

The defendants' motions for partial summary judgment are addressed to the

plaintiffs' negligence per se claim.  The plaintiffs' negligence per se claim is based on

alleged violations by the defendants of Federal Motor Carrier Safety Regulations

(FMCSR).  The defendants argue that this claim must be dismissed as a matter of law.

The plaintiffs argue that there are genuine issues of material fact that preclude the

entry of summary judgment on this claim.  For the purpose of the motions for partial

summary judgment, the defendants concede generally that the defendants violated the

FMCSR as alleged.  However, the defendants argue that Bonilla was not disqualified

from driving a commercial vehicle under FMCSR 391.23, as alleged by the plaintiffs.

Under Colorado law, violation of a statute, ordinance, or regulation adopted for

the public's safety may be negligence per se.

> Violation of a statute or ordinance adopted for the public's safety
> may be negligence per se and establish the violator's civil liability for all

3

damages proximately caused thereby.  Before the doctrine can apply, the injured party must show that he or she is a member of the class that the statute or ordinance was intended to protect, that the injuries suffered were of the kind the statute was enacted to prevent, and that the statute or ordinance prescribes or proscribes specific conduct.  If these criteria are met, the legislation establishes the standard of conduct of a reasonable person, subject in some cases to the violator's affirmative defense that compliance was impossible or would have created a greater risk of danger or injury.

*Hageman v. TSI, Inc*., 786 P.2d 452, 453 - 454 (Colo.App.1989) (citations omitted).  If the violation of a statute supports a negligence per se claim, the plaintiff still must show that the negligence was the cause of the plaintiff's injuries.  *Id*. at 453-54.  The plaintiffs claim that Bonilla and Lumber Products were in violation of four different Federal Motor Carrier Safety Regulations at the time of the accident, and that each of these violations is sufficient to support their negligence per se claim. Specifically, the plaintiffs allege that the defendants were in violation of 49 C.F.R. §§ 391.21, 391.23, 392.60(a), and 395.8.  *Amended Complaint*, ¶¶ 54 - 63.

## A.  FMCSR 391.21 & 391.23

The regulation found at 49 C.F.R. § 391.21 provides, in relevant part:

Application for employment.

(a) Except as provided in Subpart G of this part, a person shall not drive a commercial motor vehicle unless he/she has completed and furnished the motor carrier that employs him/her with an application for employment that meets the requirements of paragraph (b) of this section.

(b) The application for employment shall be made on a form furnished by the motor carrier. Each application form must be completed by the applicant, must be signed by him/her, and must contain the following information:

* * * *

(7) A list of all motor vehicle accidents in which the applicant was involved during the 3 years preceding the date the application is submitted,

specifying the date and nature of each accident and any fatalities or
personal injuries it caused;

(8) A list of all violations of motor vehicle laws or ordinances (other than
violations involving only parking) of which the applicant was convicted or
forfeited bond or collateral during the 3 years preceding the date the
application is submitted;

(9) A statement setting forth in detail the facts and circumstances of any
denial, revocation, or suspension of any license, permit, or privilege to
operate a motor vehicle that has been issued to the applicant, or a
statement that no such denial, revocation, or suspension has occurred;

The plaintiffs allege that Bonilla was convicted of at least eight motor vehicle traffic

violations between 1998 and 2002, and that he failed to report these violations to his

employer, Lumber Products, in violation of § 391.21.

The plaintiffs allege also that "(f)ailure to comply with Department of

Transportation Rules disqualifies a person from driving a commercial vehicle pursuant

to FMCSR 391.23." *Amended Complaint*, ¶ 59.  The plaintiffs do not cite any specific

subsection of this regulation, and I can not find any explicit provision in FMCSR 391.23

which disqualifies a driver.  Therefore, I will disregard this regulation in my analysis of

the negligence per se issues.

The defendants argue that the plaintiffs have not come forward with any

evidence demonstrating a causal link between the alleged violation of FMCSR 391.21

and the plaintiffs' alleged injuries.  The plaintiffs respond that Bonilla was unqualified to

drive a commercial vehicle on the day of the accident because of his violation of

FMCSR 391.21.  *Response to Supplemental Motion for Partial Summary Judgment*, p.

8.  Had the regulations been followed, the plaintiffs argue, Bonilla would not have been

driving the truck on the day of the accident, and the accident never would have

happened.

As noted above, however, FMSCR 391.23 does not disqualify a driver under the circumstances described in the Complaint, and the plaintiffs have not cited any FMSCR that indicates that Bonilla was not qualified to drive a commercial vehicle on the day of the accident.  Further, the plaintiffs have not cited any evidence that indicates that Lumber Products would not have hired Bonilla had Bonilla disclosed his convictions for motor vehicle violations in his application for employment with Lumber Products.

In short, there is no evidence in the record to show that Bonilla would not have been driving the truck on the day of the accident if he and Lumber Products had complied with FMCSR 391.21.  Absent such evidence, there is no evidence of a causal connection between the alleged violations of FMCSR 391.21, and the accident.  Absent some evidence of a causal connection between the alleged violation of FMCSR 391.21 or 391.23 and the plaintiffs' injuries, no reasonable fact finder could find for the plaintiffs on this claim.  The defendants are entitled to summary judgment on the plaintiffs' negligence per se claim based on FMCSR 391.21 and 391.23.

<u>B.  FMCSR 392.60(a)</u>

The regulation found at 49 C.F.R. § 392.60(a) provides, in relevant part:

Unauthorized persons not to be transported.

(a) Unless specifically authorized in writing to do so by the motor carrier under whose authority the commercial motor vehicle is being operated, no driver shall transport any person or permit any person to be transported on any commercial motor vehicle other than a bus. When such authorization is issued, it shall state the name of the person to be transported, the points where the transportation is to begin and end, and the date upon which such authority expires.

No written authorization is required for certain passengers, but those exceptions are not relevant here.

The plaintiffs allege that Bonilla had his two children in his truck at the time of the accident, and that he did not have authorization from his employer, as required by the regulation. *Amended Complaint*, ¶ 53. For the purpose of the motions for partial summary judgment, the defendants concede that this was a violation of FMCSR 392.60(a).

The defendants argue that the plaintiffs cannot demonstrate that they are members of the class of persons that FMCSR 392.60(a) was designed to protect. The defendants cite the regulation that defines the scope of the rules in Part 392 of the FMCSR. FMCSR 392.1 provides:

> Scope of the rules in this part.
>
> Every motor carrier, its officers, agents, representatives, and employees responsible for the management, maintenance, operation, or driving of commercial motor vehicles, or the hiring, supervising, training, assigning, or dispatching of drivers, shall be instructed in and comply with the rules in this part.

According to the defendants, FMCSR 392.1 shows that the rules in Part 392 were implemented for the purpose of managing, maintaining, and operating commercial motor vehicles. I disagree. FMCSR 392.1 simply defines all of the persons who must comply with the rules in Part 392. Beyond that, it says little or nothing about the purpose of those rules. I note also that the Colorado Court of Appeals has held that two regulations in Part 392, FMCSR 392.21 and 392.22, properly may be the basis of a negligence per se claim. ***Hageman v. TSI, Inc.***, 786 P.2d 452, 454-55 (Colo. App. 1989), cert. denied (1990).

The defendants note also that FMCSR 392.60 does not prohibit the transportation of passengers in commercial vehicles. Rather, it provides procedures for

motor carriers to grant authorization for the transportation of passengers.  The

regulation does not restrict the discretion of a motor carrier to authorize the

transportation of passengers, including children, it its vehicles.

      The plaintiffs argue that

> the safe operation of a commercial vehicle requires total concentration.
> Any distraction has the potential to result in disastrous consequences.
> Certainly having two young children in the cab of a semi-truck carries the
> very real possibility of distracting the driver.  This puts other motorists,
> including the Plaintiffs, in danger.

*Plaintiffs' Response*, p. 6.

      This logic carries some appeal, but it does not demonstrate that FMCSR

392.60(a) was adopted to protect others traveling on the highway.  The regulation

permits the transportation of passengers, including children, and does not limit a motor

carrier's discretion to permit the transportation of passengers, including children.

Passengers, and their potential distractions, are permitted under the regulation.  If

there is a safety purpose behind the regulation's requirement that a driver obtain

permission to carry a passenger, that purpose is too remote and unclear to form the

basis of a negligence per se claim.

      The regulations in Part 392 that were found to be a proper basis for a

negligence per se claim in **Hageman** differ significantly from FMCSR 392.60(a).  The

regulations in question in **Hageman**, FMCSR 392.21 and 392.22, concerned stopping a

commercial vehicle on the traveled portion of a highway, and warning devices that must

be used if a commercial vehicle is stopped on the traveled portion of a highway.  786

P.2d at 454.  The plaintiff in **Hageman** was killed when his truck collided with a

commercial vehicle that was stopped on the traveled portion of a highway.  The

8

Colorado Court of Appeals concluded that there is "no qualitative difference between the state statutes and ordinances to which the negligence per se doctrine has been applied in Colorado and the federal highway safety regulations at issue here." *Id*. In contrast, FMCSR 392.60 is not similarly analogous to the state statutes that have been found to be a proper basis for a negligence per se claim, and any safety purpose which may underlay FMCSR 392.60 is far from clear.

Finally, I note the following statement by the United States Court of Appeals for the Tenth Circuit in a case concerning regulations adopted under the Motor Carrier Act of 1935:

> While the provisions of the Act or of valid regulations promulgated under the Act with respect to safety of operation of motor vehicles on the highway may be intended primarily for the protection of employees engaged in transportation in interstate commerce for hire, the duties imposed by such provisions or such regulations are secondarily for the protection of others on the highways with right.

*Interstate Motor Lines v. Great Western Ry. Co.*, 161 F.2d 968, 970 (10th Cir. 1947) (citation omitted). The court's general statement includes the key premise that the regulations in question were adopted "with respect to safety of operation of motor vehicles on the highway." The key question here is whether FMCSR 392.60(a) falls within that premise. The court in *Interstate Motor Lines* was not examining a negligence per se issue. This statement by the Tenth Circuit does not demonstrate that FMCSR 392.60(a) was adopted to protect people traveling on the highway with commercial vehicles.

I find that FMCSR 392.60(a) was not designed or intended to promote the safe operation of commercial vehicles, including the safety of people who share the road with commercial vehicles. Therefore, this regulation is not a proper basis for a

negligence per se claim.  The defendants are entitled to summary judgment on the

plaintiffs' negligence per se claim based on FMCSR 392.60(a).

C.  FMCSR 395.8

The regulation found at 49 C.F.R. § 395.8 provides, in relevant part:

Driver's record of duty status.

(a) Except for a private motor carrier of passengers (nonbusiness), every
motor carrier shall require every driver used by the motor carrier to record
his/her duty status for each 24 hour period using the methods prescribed
in either paragraphs (a)(1) or (2) of this section.

(1) Every driver who operates a commercial motor vehicle shall record
his/her duty status, in duplicate, for each 24-hour period. The duty status
time shall be recorded on a specified grid, as shown in paragraph (g) of
this section. The grid and the requirements of paragraph (d) of this
section may be combined with any company forms. The previously
approved format of the Daily Log, Form MCS-59 or the Multi-day Log,
MCS-139 and 139A, which meets the requirements of this section, may
continue to be used.

The regulation includes other detailed requirements for recording duty status.

Subsections (d)(7) and (f)(9) require that the main office address of the motor carrier for

which a driver is driving be shown on the driver's duty status record.

The plaintiffs allege that Bonilla was in violation of this regulation at the time of

the accident because no company address was listed on his log book entries, and

because his log book shows that he was off duty from July 19, 2002, through July 22,

2002.  *Amended Complaint*, ¶ 62.  The plaintiffs allege that Bonilla actually was driving

during this time.  *Id.*

The defendants argue that the purpose of this regulation is to aid the

management, organization, and operation of commercial motor vehicles, and not to

protect other drivers on the highway.  Noting ***Hageman,*** discussed above, the

defendants argue that "failing to make certain log book entries (does) not jeopardize fellow motor vehicle safety like a stopped truck on the highway would." *Motion for summary judgment*, p. 6.

I agree with the defendants that a driver's failure to record the company address in his log book is not related to safety.  Further, the plaintiffs have cited no causal connection between Bonilla's failure to list his company's address and the plaintiffs' injuries.

Contrastingly, the requirement that drivers keep an accurate log of their duty status is related to the safety of other travelers on the road.  Drivers are required to record their duty status so compliance with the limitations on hours of service contained in Part 395 can be monitored and enforced.  FMCSR 395.3 and 305.5 provide specific limitations on the number or hours a commercial vehicle operator can be driving during certain periods of time.  Although the regulations do not explicitly declare their purpose, the tie between safety and fatigue is clear.  Safety undoubtedly is one of the key purposes of the limitations on hours of service in Part 395, and of the record keeping requirement of FMCSR 395.8.  I find that this regulation was intended to promote the safe operation of commercial vehicles, including the safety of people, like the plaintiffs, who share the road with commercial vehicles.  Although FMCSR 395.8 also might have been designed to aid the management and organization of commercial vehicles, as the defendants argue, the connection between safety and limitations on driving times is so clear that I cannot disregard that purpose.  A tired driver has the same potential to jeopardize the safety of others on the road as does a truck stopped on the highway.

Finally, the defendants argue that the plaintiffs have not shown a causal connection between the alleged violation of the FMCSR, including 395.8, and the plaintiffs' injuries.  The plaintiffs respond that it is a question of fact whether the alleged violation of FMCSR 395.8 was a cause of the plaintiffs' injuries. *Response*, p. 9.  This is true, but in response to a motion for summary judgment, the plaintiffs must come forward with some evidence that would permit a rational trier of fact to answer this question in favor of the plaintiffs.  The plaintiffs cite no such evidence.  Rather they argue that driver fatigue or lack of focus "could have contributed to this collision." *Id.*

Viewing the facts in the record in the light most favorable to the plaintiffs, no rational trier of fact could conclude that Bonilla's failure to record his duty status in his log book, as required by FMCSR 395.8, caused the plaintiffs injuries.  There is no evidence in the record that demonstrates such a causal connection.  The defendants are entitled to summary judgment on the plaintiffs' negligence per se claim based on FMCSR 395.8.

## D.  Other Violations

The plaintiffs allege also that there may be other violations of Federal Motor Carrier Safety Regulations committed by Bonilla which may have led to the accident. No other possible violations are specified in the Amended Complaint, and I will not examine whether other, unknown violations might be the proper basis for a negligence per se claim.  I have addressed each of the violations of the FMCSR that have been alleged with adequate specificity.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1) That the Defendants' Motion for Partial Summary Judgment on Plaintiffs'

Negligence Per Se Claim [#26], filed May 2, 2005, is **GRANTED**;

2) That the Defendants' Supplemental Motion for Partial Summary Judgment on

Plaintiffs' Negligence Per Se Claim [#68], filed August 24, 2005, is **GRANTED**.

Dated November 8, 2005, at Denver, Colorado.

BY THE COURT:


s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge